**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Richard West, | ) Civil Action No. 4:10-CV-2712-MBS |
|             Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER AND OPINION** |
| Michael J. Astrue, Commissioner of Social Security Administration, | ) |
|             Defendant. | ) |

Plaintiff Richard West challenges a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for supplemental security income ("SSI"). For the reasons set forth below, the Court reverses the decision of the Commissioner.

## I. BACKGROUND

In June 2005, Plaintiff filed a second application for SSI alleging an onset date of August 30, 2004.[1] R. 101-106. Plaintiff claimed that he was unable to work because of diabetes, depression, anxiety, and multiple personalities. R. 199. Plaintiff's claim was denied on October

---

[1] Plaintiff previously filed an application for disability insurance benefits ("DIB") in July 2003. R. 70-73. This claim was denied on the ground that Plaintiff was not disabled, and Plaintiff did not appeal. R. 66-69. In March 2004, Plaintiff filed an application for SSI. R.108-11. This claim was also denied on the ground that Plaintiff was not disabled, and Plaintiff again did not appeal. R. 47 & 61-65. The record also shows that Plaintiff filed applications for DIB in March 2004 and June 2005, but does not show that these were denied. R. 83-88 & 112. However, the Administrative Law Judge ("ALJ") stated that Plaintiff's last insured date for DIB was December 31, 2003, and this appears to be supported by the record. R. 18 & 80. Because Plaintiff does not object to this finding or otherwise argue that he is entitled to DIB, the present case is construed as a challenge to the SSI determination only.

13, 2005. R. 46 & 56-60. Plaintiff requested reconsideration, and his claim was denied again on March 23, 2006. R. 45 & 52-54. Counsel was appointed on May 2, 2006. R. 51. Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") on May 5, 2006. R. 50. The ALJ held a hearing on July 22, 2008. R. 605-51.

A. **Evidence Before the ALJ**

Plaintiff was first treated by Dr. Daniel Jebens, D.O., on April 20, 2005. R. 517. Dr. Jebens found that Plaintiff's blood sugar level was over 500. *Id.* Dr. Jebens noted that Plaintiff had been diagnosed with diabetes approximately one year earlier and had not been taking his medication. *Id.* Dr. Jebens diagnosed uncontrolled diabetes with neuropathy and chronic obstructive pulmonary disease. *Id.* Plaintiff continued to see Dr. Jebens regularly through the date of the Commissioner's decision. *See* R. 498-519; R. 544-560; R. 584-597.

On September 22, 2005, Plaintiff saw Dr. Lary Korn, D.O., for a disability evaluation. R. 445-447. Plaintiff told Dr. Korn that "he was doing fairly well until a couple of years ago when he developed sudden problems with weakness, fatigue, and extreme leg pain, particularly in the quadriceps areas." R. 445. Plaintiff stated that he was hospitalized due to his blood sugar level and diagnosed with insulin-dependent diabetes, and that he "has not been able to walk quite the same ever since." *Id.* Plaintiff stated that he could "only walk now for four to five minutes before he is exhausted and feels like he might pass out." *Id.* Plaintiff also stated that his vision would fluctuate and would sometimes be "bad for two to three days at a time." *Id.* Dr. Korn diagnosed insulin-dependent diabetes and stated that "[o]ther than [Plaintiff's] borderline visual acuity, his limitations seem to be more from . . . general fatigue, which I am unable to elaborate on[,] and his subjective discomfort in the legs." R. 447.

On October 6, 2005, Plaintiff saw Dr. James Ruffing, Psy.D. for a disability evaluation concerning his mental status. R. 448-450. Dr. Ruffing provided the following description of Plaintiff's subjective complaints:

> Regarding emotional and mental functioning, he stated he went to the mental health center in Spartanburg for a while a number of years ago and indicated that "I thought I had a lot of problems, the medications gave me 50 more problems." When asked about current emotional functioning, he stated that he may tend to worry, but he cannot sleep and his memory does not work as well. He states that he tends to worry about his health and dying. I asked the claimant about the allegations of multiple personalities and he stated that he had absolutely no awareness or understanding of a problem related to multiple personalities. He went on to indicate, "I'm not crazy doctor. I worked all my life. Most of the time I never paid taxes on what I made."

R. 448. Based on his observations, Dr. Ruffing stated that Plaintiff "seems able to understand and respond well with the spoken word. He is able to attend and focus without noticeable difficulty. This individual appears capable of performing repetitive to varied type tasks. He seems able to understand, remember and carry out detailed instructions." R. 450. Dr. Ruffing's psychological impressions were "deferred," and he did not diagnose any mental illness. *Id.*

On January 24, 2007, Dr. Jebens wrote an opinion stating:

> Richard West . . . is currently under my medical care. He has Brittle Diabetes Mellitus where his blood sugars fluctuate widely. He has had a few episodes of extremely low blood sugar where he has either passed out or become confused.
>
> Richard also has diabetic neuropathy in his legs that is extremely painful at times. He occasionally loses his balance or falls due to the neuropathy.
>
> Therefore I feel it would be difficult for Richard West to work regularly and extremely difficult for him to work 8 hours in a day or 5 days in a week.

R. 502.

On September 27, 2007, Dr. Gal Margalit, M.D., examined Plaintiff at the request of his attorney. R. 540-542. Dr. Margalit provided the following description of Plaintiff's subjective

3

complaints:

> His leg problems present with pains in his thighs. He has been told that he has proximal leg neuropathy. His legs give out on him. They are unpredictable. He has difficulty, especially with exertion such as walking up steps or on an incline. He also has numbness in his feet, although he states that his foot problems are not as severe as the problems with pains in his thighs. His leg pains wake him at night and have caused him insomnia. The pains contribute to the fatigue he feels in the mornings. He states that after sitting for a short period of time he normally has to lie down for two to three hours because of generalized lassitude and leg pains. He receives Lortab for the leg pain from his physician.
>
> The patient had a few episodes of syncope [loss of consciousness] as a result of hypoglycemia, although they have occurred less frequently since his sugars have stabilized.
>
> Mentally, the patient is depressed and anxious and has become increasingly irritable with people. He has difficulty with interacting with people.

R. 540. Dr. Margalit noted that he "could not find evidence of nerve conduction studies being performed on [Plaintiff's] legs," although Plaintiff had previously "been told that he has proximal leg diabetic neuropathy." R. 542. Dr. Margalit performed a monofilament exam of Plaintiff's toes and fingers and found the results to be normal. R. 541. Dr. Margalit also performed a tuning fork test at 256 Mhz to test vibration sense, and found the results to be positive. *Id.* Dr. Margalit found that:

> His diabetes is now under reasonably good control with blood sugars in the 130s using two insulin derivatives. He does not exhibit on examination any evidence of peripheral neuropathy based on clinical testing. He also has problems with fatigue, which is not likely related to his diabetes. I am not certain of the diagnosis in this case. The syncopal episodes appear to be related to hypoglycemia and are apparently less frequent than they used to be. With better control of blood sugar, these should be a minimal problem for him. . . .
>
> Psychologically, the patient is limited by depression, anxiety, some antisocial features, and irritability. Mentally, his irritability, depression, anxiety, which leads me to believe that he, may have abused cocaine in the past (despite the denial of using any illicit medications). He may have an underlying personality disorder which will hamper his ability in the work place.

4

> In my opinion, primarily on the basis of his leg pains he would be significantly limited with his ability to stand and walk. His general lassitude and weakness would make it difficult for him to sit for more than an hour at a time. He would also have difficulty with himself with lifting more than 20 pounds more than 2-3 times at one time before his fatigue would stop him.
>
> The patient is probably disabled from any form of gainful employment now and in the foreseeable future. His weakness and lassitude needs to be worked up medically when he is able to afford to have this done. He needs to remain under the care of his physician for his diabetes control.

R. 542.

On December 10, 2007, Dr. Luther A. Diehl, Ph.D., examined Plaintiff at the request of his attorney "to assess intellectual, emotional, and personality factors affecting residual capacity for gainful employment." R. 520-30. Dr. Diehl assessed Plaintiff using numerous techniques, including the Wechsler Adult Intelligence Scale, the Rey Memory Test, the Wide Range Achievement Test, the Bender Motor Gestalt Test, the Zung Depression Scale, the State Trait Anxiety Inventory, and the Rorschach Inkblot Technique. R. 521. Dr. Diehl found that Plaintiff was clinically depressed with a high level of anxiety. R. 526-27. Dr. Diehl found that Plaintiff had borderline intellectual functioning, although he noted that the results of the Rey Memory Test suggested "some lack of attention to detail as well as possibly lowered motivational level." R. 527. Dr. Diehl found that Plaintiff "appeared to be rather easily frustrated" and would probably have "most difficulties in dealing with work related situations that involve stress or conflict." R. 528.

On July 1, 2008, Dr. Jebens wrote an opinion stating:

> Richard West is currently under my medical care. He has multiple significant medical problems. The most concerning problem is he is a brittle diabetic and his sugar levels are very erratic. He has had episodes of low blood sugar causing him to black out. He also has diabetic neuropathy causing pain and cramping in his legs and feet. This limits the distance the patient can walk and decreases his

> ability to stand and climb stairs. The patient takes pain medications that can potentially make him drowsy. Therefore in my opinion the patient would have limited ability to perform work.

R. 544.

**B.     Testimony of the Vocational Expert**

The ALJ first presented a hypothetical question to the Vocational Expert ("VE") involving a person who could not work in extreme heat or at unprotected heights, who needed work that was primarily seated due to fatigue issues, who had borderline intellectual functioning and was limited to simple tasks, and who could lift twenty pounds occasionally and ten pounds frequently from bench level only. R. 648. The VE stated that "the limitations would fall somewhere between sedentary and light, unskilled." *Id.* The VE stated that approximately 50% of the small parts assembler jobs in the economy would be available, as well as electrical assembler jobs. R. 648-49. The VE also stated that "[t]here would be other similar work at the sedentary level where sitting is up to . . . six hours a day by definition." R. 649.

The ALJ next presented a hypothetical in which the aforementioned person was limited by leg pain and would need more than normal rest breaks, causing difficulty with pace and ruling out production pace. R. 649. The VE stated that no work would be available in this scenario. *Id.* The VE explained that the available unskilled jobs "require one to stick with it and to at least perform a minimum of production whether or not it's a piece rate pay scale, and a person requiring unscheduled breaks" would not qualify. R. 649-50.

**C.     ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2005. R. 20. The ALJ found that Plaintiff had multiple severe mental impairments,

specifically diabetes mellitus, borderline intellectual functioning, depressive disorder, and mixed personality disorder with borderline and paranoid features. *Id.* However, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (a "Listed Impairment"). R. 26. The ALJ found that Plaintiff's mental impairments cause mild restrictions in activities of daily living and social functioning and moderate restrictions with respect to concentration, persistence, or pace. R. 27.

The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff could stand/walk for a maximum of two hours in a workday, could not tolerate exposure to extreme heat or unprotected heights, and was limited to simple tasks. R. 28. The ALJ also found that Plaintiff could lift twenty pounds occasionally or ten pounds frequently and could "sit or stand six hours each in any eight hour combination." *Id.* The ALJ stated that "[i]n making this finding, [she] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

> In discounting the opinions of several doctors, the ALJ stated:
>
> Dr. Margalit's and Dr. Diehl's statements that the claimant is disabled are opinions about an issue reserved to the Commissioner and are not entitled to controlling weight or special significance. However, the opinions may not be ignored. In this case, neither Dr. Diehl nor Dr. Margalit provided a reasonable basis for their opinions. The findings made during their exams do not support their statements. Dr. Diehl made a number of statements indicating that the claimant was malingering during exam and testing and results of the Rey Memory Test support this. Dr. Margalit admitted that he could find no objective basis to support [Plaintiff's] complaints of leg pain and fatigue. Claimant was not forthcoming with either Dr. Diehl or Dr. Margalit regarding his history of substance abuse.
>
> Thus, their opinions are inconsistent with their own findings and with the remainder of the evidence. I find their opinions are not entitled to controlling

weight and do not support my conclusions (20 CFR 416.927(e) and SSR 96-5p).

Dr. Jebens stated that the claimant would have limited ability to perform work and that he would have extreme difficulty working for eight hours a day, five days a week. However, under SSR 96-9p, I cannot assign controlling weight to those opinions. As with Dr. Diehl's and Dr. Margalit's opinions, Dr. Jebens' opinions are not supported by his own findings and are inconsistent with the remainder of the evidence. He based his opinions on fluctuating blood sugars, when claimant had told him on many occasions that his blood sugars were "okay" or "doing fairly well." In fact, when Dr. Jebens tested the claimant's blood sugar on one occasion, it was well-controlled. It appears he relied on the claimant's statements to him, both to diagnose uncontrolled blood sugars and acceptable blood sugars. Dr. Jebens also relied on his assertion that claimant was limited by polyneuropathy in the legs when there is no evidence to support his diagnosis of that condition.

R. 33. The ALJ stated that "[i]n sum, the above [residual functional capacity] assessment is supported by findings of Dr. Korn and Dr. Ruffing, by a lack of evidence of significant complications of diabetes mellitus and by evidence as to a wide range of activities of daily living." *Id.*

The ALJ found that Plaintiff was unable to perform any past relevant work because it was unsafe for him to drive a vehicle or work at heights. R. 33. The ALJ noted that Plaintiff was unable to perform a full range of light work due to his specific limitations. R. 34. However, the ALJ found, based on the testimony of the VE, that Plaintiff could "perform the requirements of representative unskilled occupations at the light exertion level, including work as a small parts assembler (with numbers reduced by 50%) . . . and as an electrical assembler." *Id.*

**D.    Appeals Council's Denial**

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 27, 2010, and therefore the decision of the ALJ became the final decision of the Commissioner. R. 7-10. Before the Appeals Council were several new exhibits submitted by

Plaintiff. Plaintiff submitted a December 21, 2009 opinion by Dr. Jebens stating:

> Richard West . . . is currently under my medical care. He has Brittle Diabetes Mellitus and Diabetic Neuropathy. His neuropathy has progressed since I began seeing him over 3 y[ears] ago. The neuropathy is painful, causing swelling in his feet and legs, and causes weakness of his legs. He falls frequently and needs to keep them elevated most of the time because of swelling. I feel it would be extremely difficult for him to work regularly or stand or sit for more than an hour or two at a time.

R. 584. Plaintiff also submitted Dr. Jebens' treatment notes between January 21, 2009, and December 21, 2009. R. 585-596. Plaintiff also submitted a transcript of a sworn deposition by Dr. Benson Hecker, a VE. R. 561-78. Dr. Hecker stated, among other things, that a person with either moderate impairment in his ability to maintain pace and concentration or the ability to sit and stand in combination for only six hours in an eight-hour workday would be unable to perform jobs such as a small parts assembler or electrical assembler. R. 570-71.

### E.     District Court Review

On October 21, 2010, Plaintiff filed the present action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision denying his claim for SSI.[2] In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(a), D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pretrial handling. On May 9, 2011, Plaintiff filed a brief advancing three specific challenges to the ALJ's decision. First, Plaintiff argued that the ALJ erred in failing to properly evaluate the opinions and treatment records of his treating physician, Dr. Jebens. ECF No. 13 at 18-24. Second, Plaintiff argued that the ALJ erred by presenting a hypothetical question to the VE that did not correctly reflect

---

[2]     The Court notes that review in this case is pursuant to 42 U.S.C. § 1383(c)(3), which provides for review of adverse SSI determinations, rather than 42 U.S.C. § 405(g), which provides for review of adverse DIB determinations.

9

Plaintiff's residual functional capacity. *Id.* at 24-26. Finally, Plaintiff argues that the ALJ erred in relying on the VE's testimony without determining whether the VE's testimony was consistent with the Dictionary of Occupational Titles. *Id.* at 26-27. On June 23, 2011, the Commissioner filed a Memorandum in support of the decision denying Plaintiff's claims. ECF No. 14. Plaintiff filed a response to the Commissioner's Memorandum on July 11, 2011. ECF No. 15.

On January 31, 2012, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Commissioner's decision to deny Plaintiff's claims be reversed and that the case be remanded. ECF No. 18. On February 16, 2012, the Commissioner filed a brief objecting to the R&R. ECF No. 20. Plaintiff responded to the Commissioner's objections on March 12, 2012. ECF No. 26.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

## II. STANDARD OF REVIEW

This court's review of the Commissioner's final decision is limited to determining whether the correct law was applied and whether the factual findings are supported by

substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," or "more than a mere scintilla but . . . somewhat less than a preponderance." *Shivley v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). The role of this court is not to review the evidence *de novo* or resolve conflicts in the evidence. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971). Rather, the Commissioner's factual determinations "must be upheld if [they are] supported by substantial evidence in the record as a whole." *Howard v. Sec'y of Health & Human Serv.*, 741 F.2d 4, 8 (2d Cir. 1984). "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

### III. APPLICABLE LAW

SSI is available only to a claimant who is disabled. 42 U.S.C. § 1382(a)(1). A claimant is considered disabled only if he demonstrates an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The claimant must show that his physical and/or mental impairments "are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security regulations set forth a five-step evaluation process to determine

whether a claimant is disabled. The adjudicator must consider whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment or impairments; (3) had a condition which met or equaled the severity of a Listed Impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4). If the claimant is found to be either disabled or not disabled at any step, no further inquiry is necessary.

If a claimant is found to have one or more severe impairments, the adjudicator must determine whether the impairment or combination of impairments meets, or is medically equivalent to, the criteria of a Listed Impairment. 20 C.F.R. § 416.920(d). If the claimant's impairments meet or equal the criteria of a listing and meet the duration requirement, the claimant is found to be disabled. *Id.* Otherwise, the adjudicator must determine the claimant's "residual functional capacity"; that is, the claimant's ability to work despite having a severe impairment. *See* C.F.R. § 416.920(e). The adjudicator then determines whether, based on this residual functional capacity and other relevant factors, the claimant is able to resume past work or perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(f)-(g).

## IV. DISCUSSION

### A. Opinions of Dr. Jebens

The ALJ found that "Dr. Jebens' opinions are not supported by his own findings and are inconsistent with the remainder of the evidence." R. 33. The ALJ discounted the opinions of Dr. Jebens as to Plaintiff's fluctuating blood sugars because "[i]t appears [Dr. Jebens] relied on [Plaintiff's] statements to him, both to diagnose uncontrolled blood sugars and acceptable blood

sugars." *Id.* The ALJ further suggested that the diagnosis was contradicted by the evidence that Plaintiff "told [Dr. Jebens] on many occasions that his blood sugars were 'okay' or 'doing fairly well,'" and that "when Dr. Jebens tested [Plaintiff's] blood sugar on one occasion, it was well-controlled." *Id.* The ALJ also discounted Dr. Jebens' opinions as to Plaintiff's neuropathy because "there is no evidence to support his diagnosis of that condition." R. 33. The ALJ noted elsewhere that Plaintiff was prescribed strong narcotic medications for his pain, but stated that "given the fact that there is no apparent basis for the severe pain he alleges (based on Dr. Margalit's evaluation), and the lack of findings from Dr. Jeben[s]'s records, there does not appear to be a medical reason for [Plaintiff] obtaining significant amounts of narcotics." R. 32.

Normally, a treating physician's opinion as to the nature and severity of a claimant's impairments is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, the evidence supporting the physician's opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. *Id.* at § 416.927(d). "Courts often give greater weight to the testimony of a treating physician because the treating physician has necessarily examined the [claimant] and has a treatment relationship with the [claimant]." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quotation omitted). However, the ALJ may give lesser weight to the opinion of a treating physician in the face of persuasive contrary evidence. *Id.* at 654 n.5 (quotation omitted). An opinion that a claimant is "disabled" or "unable to work" is not a

medical opinion but an administrative finding, and a physician's opinion on this ultimate issue is not entitled to special weight. 20 C.F.R. § 416.927(e).

The Magistrate Judge found that because many of Dr. Jebens' handwritten notes are illegible, it was impossible for him to determine whether Dr. Jebens' opinions were in fact "not supported by his own findings." ECF No. 18 at 7-8. Accordingly, the Magistrate Judge found that "there is not substantial evidence to support the ALJ's decision with regard to the weight given to the reports of Dr. Jebens" and recommended that on remand, the ALJ should clarify how Dr. Jebens' records do not support his opinions. *Id.* at 8-9. The Commissioner objects to this recommendation, arguing that even if some notes are illegible, "there was substantial evidence that was legible to support the ALJ's conclusion." ECF No. 20 at 2. The Commissioner argues that Dr. Jebens' treatment records generally show that Plaintiff's blood sugar levels were controlled with medications, contradicting Dr. Jebens' finding that Plaintiff was limited due to his fluctuating blood sugar levels. *Id.* The Commissioner also argues that Dr. Jebens "did not perform any objective tests to support a neuropathy diagnosis" and instead relied largely on Plaintiff's subjective complaints. *Id.* at 3. Finally, the Commissioner argues that "Dr. Jebens' opinions were not conclusive regarding whether Plaintiff had disabling work-related limitations." *Id.* at 4.

The court notes that Dr. Margalit examined Plaintiff on September 27, 2007, performed several clinical tests for neuropathy, and concluded that these clinical tests did not provide evidence of neuropathy. *See* R. 541-42. This finding provides some evidence contradicting Dr. Jebens' diagnosis. However, Dr. Jebens saw Plaintiff regularly for over three years and continuously diagnosed neuropathy. It is not clear from his handwritten notes whether he ever

performed the same clinical tests performed by Dr. Margalit, such as monofilament or vibration tests, and obtained results different from those obtained by Dr. Margalit. Furthermore, although Dr. Jebens' notes often contain identifiable references to edema and decreased sensation, it is impossible to interpret these references in most instances. Dr. Jebens' clinical findings are critical in determining the weight to be afforded to his opinions, and without being able to interpret these findings the court is unable to determine whether the ALJ's decision to give minimal weight to these opinions was supported by substantial evidence.

     Dr. Jebens' opinions, if credited, would have very likely resulted in a finding that Plaintiff was disabled. In his January 24, 2007 opinion, Dr. Jebens stated that Plaintiff had diabetic neuropathy in his legs, and that this condition was "extremely painful at times" and sometimes caused him to lose his balance or fall. R. 502. Based on this and on Plaintiff's fluctuating blood sugar levels, Dr. Jebens felt that "it would be difficult for [Plaintiff] to work regularly and extremely difficult for him to work 8 hours in a day or 5 days in a week." *Id.* In his December 21, 2009 opinion sent to the Appeals Council, Dr. Jebens stated that Plaintiff's "neuropathy has progressed" since Dr. Jebens first saw him several years earlier. R. 584. Dr. Jebens stated that "[t]he neuropathy is painful, causing swelling in [Plaintiff's] feet and legs, and . . . weakness of his legs." *Id.* Dr. Jebens also stated that Plaintiff fell frequently and needed to keep his feet elevated most of the time because of swelling. *Id.* For these reasons, Dr. Jebens felt that "it would be extremely difficult for [Plaintiff] to work regularly or stand or sit for more than an hour or two at a time." *Id.*

     The court finds that the Commissioner's objections are without merit. Remand is necessary to determine the appropriate weight to be given to Dr. Jebens' opinions. If, on

remand, the ALJ determines that Dr. Jebens' observations do not constitute the "medically acceptable clinical and laboratory diagnostic techniques" necessary for a treating physician's opinion to have controlling weight, the reasons for this finding should be articulated.

B.     **Hypothetical Questions to the Vocational Expert**

Plaintiff notes that at step three, in the course of determining whether Plaintiff's combination of impairments met or medically equaled a listed impairment, the ALJ found that Plaintiff's mental impairments caused "moderate difficulties" with respect to concentration, persistence, or pace. *See* R. 27. Plaintiff further notes that in the ALJ's first hypothetical question posed to the VE, the ALJ stated only that the person would be limited to "simple tasks" and did not mention any limitations as to concentration, persistence, or pace. *See* R. 648. Plaintiff points out that in the second hypothetical question, where the ALJ stated that the person would have leg pain and "would need more than normal rest breaks so he would have difficulty with pace," the VE responded that no jobs would be available. *See* R. 649.

Plaintiff argues that a limitation to "simple tasks" does not adequately take into account the "moderate difficulties" with respect to concentration, persistence, or pace that he was found to have. Plaintiff further argues that the answer to the second question reveals that including a limitation based on "difficulty with pace" would have affected the answer to the first question, upon which the ALJ relied in concluding that Plaintiff could perform work in the national economy. Plaintiff also cites the testimony of VE Dr. Hecker, which Plaintiff submitted to the Appeals Council:

> In addition, when we look at the moderate impairments of concentration, persistence and pace, the . . . identified jobs of small parts assembler and electrical assembler would require meeting production standards and quotas eight hours a day, five days a week on a regular and consistent basis, so if you're

16

moderately impaired in the capacity to persist or maintain pace or concentrate, you're not going to be able to perform the jobs identified.

R. 571.

The Commissioner argues that the finding of a "moderate" limitation is used only at steps two and three and is not appropriate for inclusion in the residual functional capacity assessment or in a hypothetical question proffered to the VE. Rather, the Commissioner argues, "general terms or severity ratings" such as "moderate" are not used in assessing residual functional capacity because they "do not describe function and do not usefully convey the extent of capacity limitations." ECF No. 14 at 22. The Commissioner argues that "when the ALJ reached the residual functional capacity portion of her analysis, she reasonably, and properly, translated the evidence into concrete functional abilities." *Id.* The Commissioner notes that the ALJ found that Plaintiff was able to carry out short and simple instructions; attend to and perform simple tasks without special supervision for at least two-hour periods; understand work hour requirements and be prompt within reasonable limits; work in coordination with others without being distracted by them; make simple work-related decisions; and complete a normal workday and workweek without an unreasonable number of rest periods. *Id.* at 22-23.

Plaintiff cites *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), in which the Third Circuit held that in a hypothetical question to a VE, a restriction to "simple tasks" did not adequately encompass the ALJ's earlier finding that the claimant "often" suffered from deficiencies in concentration, persistence, or pace. The Third Circuit noted that "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." *Id.* The Commissioner cites *Stubbs-Danielson v. Astrue*, 539 F.3d

1169, 1174 (9th Cir. 2008), in which the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." The Ninth Circuit held that, in that case, a restriction to "simple tasks" in a hypothetical question to a VE adequately incorporated a doctor's opinion that the claimant was "moderately limited" in her ability to "perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* The Ninth Circuit distinguished *Ramirez*, noting that a doctor in *Ramirez* had identified a specific functional restriction and its medical basis rather than simply opining that the claimant's pace was "moderately limited." *Id.* at 1175.

This court agrees with the Ninth Circuit's analysis and finds that the two cases can be reconciled. Accordingly, the court holds that an ALJ's finding that a claimant is "moderately limited" with respect to concentration, persistence, or pace does not, in itself, establish any limit on the claimant's residual functional capacity. Rather, the proper focus is on the underlying medical evidence and whether the residual functional capacity determined by the ALJ and presented in a hypothetical question to the VE adequately reflects this medical evidence.

The ALJ did not identify specific medical evidence supporting her determination that Plaintiff has "moderate difficulties" with concentration, persistence, or pace. Rather, the ALJ stated:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Diehl found borderline intellectual functioning, but indicated that claimant probably functioned at a higher level. On all mental status exams, he displayed intact cognitive ability. However, the overall record supports the moderate level of restriction.

R. 27. Upon reviewing the record, the court finds no medical evidence showing that Plaintiff's

mental limitations would cause him to need more rest breaks than usual or otherwise prevent him from maintaining the pace required for the jobs listed by the ALJ. Furthermore, Dr. Hecker's statement that a person who is "moderately impaired in the capacity to persist or maintain pace or concentrate" would be unable to perform these jobs is not helpful because it refers only to "moderate" impairment rather than to specific functional limitations Plaintiff was found to have. Because the ALJ's first hypothetical question accurately reflected the residual functional capacity Plaintiff was found to have, there was no error.

## V. **CONCLUSION**

After a thorough review of the Report and Recommendation and the record in this case, the court adopts the Magistrate Judge's analysis only as to the ALJ's consideration of opinion evidence and concurs in the Magistrate Judge's recommendation. The Commissioner's decision is reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour  
Margaret B. Seymour  
Chief United States District Judge

March 21, 2012  
Columbia, South Carolina